Barbara A. Rohr, SBN 273353
Benjamin Heikali, SBN 307466
**FARUQI & FARUQI LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone:      (424) 256-2884
Facsimile:      (424) 256-2885
Email: brohr@faruqilaw.com
          bheikali@faruqilaw.com

**[Additional counsel on signature page]**

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GUERRA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LINEAR TECHNOLOGY CORP., ROBERT H. SWANSON, JR., LOTHAR MAIER, ARTHUR C. AGNOS, JOHN J. GORDON, DAVID S. LEE, RICHARD M. MOLEY and THOMAS S. VOLPE,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934, AND RULE 14A-9**<br><br>**JURY TRIAL DEMANDED**<br><br><u>**CLASS ACTION**</u> |

Plaintiff David Guerra ("Plaintiff"), by and through his undersigned counsel, brings this stockholder class action on behalf of himself and all other similarly situated public stockholders of Linear Technology Corporation ("Linear" or the "Company") against Linear, Robert H. Swanson, Jr., Lothar Maier, Arthur C. Agnos, John J. Gordon, David S. Lee, Richard M. Moley and Thomas S. Volpe, the members of Linear's board of directors (the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities Exchange

Act of 1934 ("Exchange Act"), 15 U.S,C. §§78n(a) and 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with acquisition of Linear by Analog Devices, Inc. ("Analog") through a merger transaction as alleged in detail herein ("Proposed Transaction"). Plaintiff alleges the following based upon personal knowledge as to himself, and upon information and belief, including the investigation of Counsel, as to all other matters.

## NATURE OF THE ACTION

1.      On July 26, 2016, Linear and Analog jointly announced that they had reached a definitive Agreement and Plan of Merger ("Merger Agreement") under which Analog will acquire Linea in a cash and stock deal with a combined enterprise value of approximately $30 billion.[1]   Under the terms of the Merger Agreement, Linear's public stockholders will receive $46.00 per share in cash and 0.2321 shares of Analog common stock for each of their Linear share ("Merger Consideration").[2]   The Proposed Transaction values Linear stock at approximately $60.00 per share, and represents a total equity value of approximately $14.8 billion.[3]

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy") that was filed with the SEC on September 16, 2016. The Linear Board recommends in

---

[1] The Proposed Transaction will be effected through Analog's wholly-owned Delaware corporation Tahoe Acquisition Corp.  Linear will merge with and into Tahoe, with Linear surviving as a wholly-owned subsidiary of Analog.

[2] The ratio of stock consideration to cash consideration is subject to adjustment provided in the Merger Agreement, so that the aggregate number of shares issued by Analog as stock consideration will not exceed 19.9% of the total outstanding common stock of Analog prior to consummation. Each of the Company's equity awards that were outstanding as of July 22, 2016 and are unvested as of the closing, will be converted into the right to receive the Merger Consideration in respect of each share of the Company's common stock underlying such award when such award vests.  Each of the Company's other equity awards that were granted after July 22, 2016 and are unvested as of the closing will be converted into the right to receive 0.9947 shares of Analog common stock in respect of each share of the Company's common stock underlying such award when such award vests.

[3] Linear also has a $1.4 billion net cash position, which reduces the deal size.

CLASS ACTION COMPLAINT

the Proxy that Linear stockholders vote in favor of approving Proposed Transaction at the stockholders annual meeting on October 18, 2016 and agree to exchange their shares pursuant to the terms of the Merger Agreement based among other things on internal and external factors examined by the Board to make its recommendation and an opinion rendered by the Company's financial advisor, Qatalyst Partners, L.P. ("Qatalyst").

3.      The Merger Consideration and the process by which Defendants agreed to consummate the Proposed Transaction are fundamentally unfair to Linear's public stockholders. Although the Company reported revenues declines for several quarters in 2015, Linear made a tremendous comeback in the quarter leading to the announced Proposed Transaction. Indeed, on July 26, 2016, the same day Defendants announced the Proposed Transaction, the Company reported positive earnings and other financial measures including quarterly revenues of $373.8 million for the fourth quarter of fiscal 2016, an increase of 3.5% from the prior reporting period.

4.      As discussed further below, little real effort was made to engage in a true market check to find other parties interested in a strategic transaction with the Company to maximize value for Linea stockholders. The inadequate Merger Consideration reflects the lack of effort as it does not reflect the value of the Company or the fair value of Linear stock.

5.      Rather, the inadequate Merger Consideration reflects the Board's desire to complete a transaction with Analog to serve their own financial self-interests. The process was conducted to ensure that the Individual Defendants could cash in on their otherwise illiquid equity holdings in the Company, through accelerated vesting of unvested equity in the Company (*e.g.*, options and restricted stock) for millions of dollars, as well as a lucrative change-in-control payment plan for other insiders.

6.      To ensure the success of the Proposed Transaction, the Linear Board locked up the deal by agreeing to impermissible "deal-protection" devices, effectively rendering the Proposed Transaction a *fait accompli*. For example, the Board agreed to: (i) a no-solicitation provision that prevents the Company from negotiating with or providing confidential Company

CLASS ACTION COMPLAINT

information to competing bidders except under extremely limited circumstances and must publicly reaffirm its commitment to the Proposed Transaction if Analog requests under certain circumstances; (ii) a provision mandating that the Company must inform Analog if it receives a competing bid and provide it with all information about the bid; (iii) before taking action on a bid that is a superior proposal from another potential acquirer, give Analog four business days to match the superior proposal; and (iv) a $490 million termination fee to be paid to Analog if the Board agrees to a competing superior proposal.

7.     In pursuing the plan to facilitate Analog's acquisition of Linear for grossly inadequate consideration, through a flawed process, the Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and regulations thereunder, by causing the materially incomplete and misleading Proxy to be filed with the SEC, which recommends that Linear stockholders vote in favor of the Proposed Transaction based on misleading information and without disclosing all material information which renders the Proxy misleading.

8.     Specifically, the Proxy contains materially incomplete and misleading information concerning (i) the background of the Proposed Transaction; (ii) the Company's internal financial data forecasts used for the financial analyses of the Proposed Transaction performed by Qatalyst.

9.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction or in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations Sections 14(a) and 20(a) of the Exchange Act.

## PARTIES

10.     Plaintiff David Guerra is, and has been at all relevant times, a stockholder of Linear common stock.

11.     Defendant Linear designs, manufactures and markets a broad line of high performance analog integrated circuits for major companies worldwide. Linear's products

CLASS ACTION COMPLAINT

provide a bridge between the analog world and the digital electronics in communications, networking, industrial, transportation, computer, medical, instrumentation, consumer, and military and aerospace systems. Linear produces power management, data conversion, signal conditioning, RF and interface ICs, μModule® subsystems, and wireless sensor network products. Linear is a Delaware corporation. Linear common stock trades on the NASDAQ Global Select Market under the symbol "LLTC".

12.     Defendant Robert H. Swanson, Jr. is the founder of the Company and has served on its Board since its inception in 1981. He has held numerous senior management positions with the Company throughout its history.  He currently serves the Executive Chairman of the Board.

13.     Defendant Lothar Maier has been a member of Board since 2005 and the Company's Chief Executive Officer ("CEO") since 2005.

14.     Defendant Arthur C. Agnos has been a member of the Board since 2010.

15.     Defendant John J. Gordon has been a member of the Board since 2010.

16.     Defendant David S. Lee has been a member of the Board since 1988.

17.     Defendant Richard M. Moley has been a member of the Board since 1994 and is the Chairman of the Compensation Committee.

18.     Defendant Thomas S. Volpe has been a member of the Board since 1984 and is the Chairman of the Audit Committee.

19.     The above members of the Linea Board are referred to herein as the "Individual Defendants" and/or the "Board."

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

21.     Personal jurisdiction exists over each Defendant either because the Defendant is an individual who is either present in this District for jurisdictional purposes or has sufficient

minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; and (ii) Linear has its principal place of business in Milpitas, California, within this District.

## SUBSTANTIVE ALLEGATIONS

**A.     Background**

23.     As reported in its annual report, Linear "produces a wide range of products for a variety of customers and markets. The Company emphasizes standard products and multi-customer application specific products to address larger markets and to reduce the risk of dependency upon a single customer's requirements.  The Company targets the high performance segment of the analog integrated circuit market. "High performance" may be characterized by higher precision, higher efficiency, lower noise, lower power, higher linearity, higher speed, higher voltage, more subsystem integration on a single chip and many other special features. Increased demand for more complex integrated analog solutions has fostered the expansion of the Company's products to include fully integrated module solutions for system power, signal processing and data acquisition applications. The Company's SmartMesh IP and SmartMesh WirelessHART technology offers complete wireless network based solutions using low power electronic components, board level products with mesh networking and software addressing high level applications such as industrial process automation, data center energy management, building energy management, renewable energy monitoring, and transportation management systems. The Company focuses virtually all of its design efforts on proprietary products, which at the time of introduction are original designs by the Company offering unique characteristics differentiating them from those offered by competitors." [4]

---

[4] www.sec.gov/Archives/edgar/data/791907/000079190716000207/lltc-20160703x10k.htm#Item1Business. (last visited 09/27/2016)

24.     Semiconductor components are the electronic building blocks used in electronic systems and equipment. These components are classified as either discrete devices (such as individual transistors) or integrated circuits (in which a number of transistors and other elements are combined to form a more complicated electronic circuit). Integrated circuits ("ICs") may be divided into two general categories, digital and linear (or analog). Digital circuits, such as memory devices and microprocessors, generally process on-off electrical signals, represented by binary digits, "1" and "0." In contrast, linear integrated circuits monitor, condition, amplify or transform continuous analog signals associated with physical properties, such as temperature, pressure, weight, light, sound or speed, and play an important role in bridging between real world phenomena and a variety of electronic systems. Linear integrated circuits also provide voltage regulation and power control to electronic systems, especially in hand-held and larger battery powered systems where battery management and high power efficiency are needed.[5]

**B.     The Proposed Transaction and Flawed Sale Process**

25.     The Proposed Transaction was announced on July 26, 2016:

NORWOOD, MA and MILPITAS, CA, July 26, 2016— Analog Devices, Inc. (NASDAQ: ADI) ("Analog Devices") and Linear Technology Corporation (NASDAQ: LLTC) ("Linear Technology") today announced that they have entered into a definitive agreement under which Analog Devices will acquire Linear Technology in a cash and stock transaction that values the combined enterprise at approximately $30 billion[(1)]. Upon completion of the acquisition, Analog Devices will be the premier global analog technology company with approximately $5 billion in anticipated annual revenues.

Under the terms of the agreement, Linear Technology shareholders will receive $46.00 per share in cash and 0.2321 of a share of Analog Devices common stock for each share of Linear Technology common stock they hold at the closing of the transaction. The transaction values Linear Technology at approximately $60.00 per share[(1)], representing an equity value for Linear Technology of approximately $14.8 billion[(1)].

---

[5]www.sec.gov/Archives/edgar/data/791907/000079190716000207/lltc-20160703x10k.htm#Item1Business. (last visited 09/27/2016)

CLASS ACTION COMPLAINT

"The combination of Analog Devices and Linear Technology brings together two of the strongest business and technology franchises in the semiconductor industry," said Vincent Roche, President and Chief Executive Officer of Analog Devices. "Our shared focus on engineering excellence and our highly complementary portfolios of industry-leading products will enable us to solve our customers' biggest and most complex challenges at the intersection of the physical and digital worlds. We are creating an unparalleled innovation and support partner for our industrial, automotive, and communications infrastructure customers, and I am very excited about what this acquisition means for our customers, our employees, and our industry."

Bob Swanson, Executive Chairman and Co-founder of Linear Technology, added, "For 35 years, Linear Technology has had great success by growing its business organically. However, this combination of Linear Technology and Analog Devices has the potential to create a combination where one plus one truly exceeds two. As a result, the Linear Technology Board concluded that this is a compelling transaction that delivers substantial value to our shareholders, and the opportunity for additional upside through stock in the combined company. Analog Devices is a highly respected company. By combining our complementary areas of technology strength, we have an excellent opportunity to reinforce our leadership across the analog and power semiconductor markets, enhancing shareholder value. Together, Linear Technology and Analog Devices will advance the technology and deliver innovative analog solutions to our customers worldwide. We are committed to working with the ADI team to ensure a smooth transition."

***Compelling Strategic and Financial Benefits***

- ***Global High-Performance Analog Industry Leader:*** Combination expected to create a global high-performance analog industry leader across data converters, power management, amplifiers, interface, and RF and microwave products
- ***Highly Complementary Businesses:*** Highly complementary product portfolios create the industry's most comprehensive suite of high-performance analog offerings and expand Analog Devices' total addressable market to $14 billion from $8 billion
- ***Leading Positions & Commitment to Customers:*** Combined company expected to be a leader across all major high-performance analog product categories and will have a shared commitment to providing customers with the highest levels of innovation, service, and support
- ***Accelerates Innovation and Revenue Growth in Attractive Markets:*** Unique combination of engineering excellence and

CLASS ACTION COMPLAINT

domain expertise accelerates innovation and revenue growth opportunities in the industrial, automotive, and communications infrastructure markets

- **Best-in-Class Financial Model:** Value of innovation and engineering excellence reflected in best-in-class financial model, non-GAAP margins, and free cash flow
- **Accretive Transaction:** The transaction is expected to be immediately accretive to Analog Devices' non-GAAP EPS and free cash flow. Analog Devices expects to achieve $150 million of annualized run-rate cost synergies within 18 months post transaction close

Mr. Roche concluded, "We have tremendous respect and admiration for the franchise created by Linear Technology. I have no doubt that the combination of our two companies will create a trusted leader in our industry, capable of generating tremendous value for all of our stakeholders."

Following the transaction close, Mr. Roche, President and CEO of Analog Devices will continue to serve as President and CEO of the combined company, and David Zinsner, SVP and CFO of Analog Devices, will continue to serve as SVP and CFO of the combined company. Analog Devices and Linear Technology anticipate a combined company leadership team with strong representation from both companies across all functions. The Linear Technology brand will continue to serve as the brand for Analog Devices' power management offerings. The combined company will use the name Analog Devices, Inc. and continue to trade on the NASDAQ under the symbol ADI

**Transaction Structure and Terms**

Under the terms of the agreement, Linear Technology shareholders will receive $46.00 per share in cash and 0.2321 of a share of Analog Devices common stock for each share of Linear Technology common stock they hold at closing. The transaction values Linear Technology at approximately $60.00 per share[1], representing an equity value for Linear Technology of approximately $14.8 billion[1]. Post-closing, Linear Technology shareholders will own approximately 16% of the combined company on a fully-diluted basis.

Analog Devices intends to fund the transaction with approximately 58 million new shares of Analog Devices common stock, approximately $7.3 billion of new long-term debt, and the remainder from the combined company's balance sheet cash. The new long-term debt is supported by a fully underwritten bridge loan commitment and is expected to consist of

term loans and bonds, with emphasis on pre-payable debt, to facilitate rapid deleveraging.

This transaction has been unanimously approved by the boards of directors of both companies. Closing of the transaction is expected by the end of the first half of calendar year 2017, and is subject to regulatory approvals in various jurisdictions, the approval of Linear Technology's shareholders, and other customary closing conditions.

26.    The process that led to this announced Proposed Transaction was fundamentally flawed from the beginning.  As described in the Proxy, although several companies apparently were contact, the focus always was a transaction with Analog.  Proxy, 95-105.

## C.    The Proposed Transaction Undervalues Linear Shares

27.    The Merger Consideration offered to Linear's public stockholders in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of the Company's common stock is materially in excess of the amount offered for those securities in the proposed acquisition given the Company's prospects for future growth and earnings.  The Proposed Transaction will deny Class members their right to fully share equitably in the true value of the Company.   Indeed, the benefits obtained by Analog through the Proposed Transaction outweigh those provided in the Merger Consideration as Linear will continue to gain market share, increase revenues and profits, all for the benefit of Analog. The Board is depriving current Linear stockholders the benefits of the investment they expected when they purchased Linear common stock.

28.    The Company has recently turned around its operations and reported increased earnings results after several quarters of declines.[6]  For the third fiscal quarter 2016 (ending April 3, 2016), the Company reported revenues of $361.1 million an increase of $14.0 million or 4.0% over the previous quarter's revenue of $347.1 million.[7]

---

[6]    www.sec.gov/Archives/edgar/data/791907/000079190716000179/lltc-20160726xex99_1.htm. (last visited 09/27/2016)

[7] www.sec.gov/Archives/edgar/data/791907/000079190716000155/lltc-20160419xex99_1.htm. (last visited 09/27/2016)

29.     As noted above, for the fourth quarter (ended July 26, 2016), in addition to quarterly increase in revenues of 3.5%, the Company also reported the following very positive results: (i) Geographically, sales in Japan increased 10%, ROW increased 5% and North America increased by 3% while Europe decreased 2%, (ii) ASP (average selling price) of our products exceeded $2 for the quarter. The last time that we had a quarterly ASP above $2 was in FY2001. This increase is due to the higher functional value LTC products bring to our customers, including our BMS (Battery Management System)and Micro-Module products; (iii) BMS sales grew nearly 30% last quarter and also set an all-time high for quarterly sales highlighting the strength of this business in China; (iv) Micro-Module products also had a record sales quarter driven by the release of new products and broader acceptance of previously released Micro-Module products; (v) Gross Margin increased by 2 tenths to 76.4%.

30.     The Individual Defendant, Maier,  stated in a press release announcing the results:

> We met the midpoint of our revenue guidance with growth of 3.5% sequentially over the March quarter. We are pleased that we have bounced back with three sequential quarters of revenue growth after suffering a significant decline in the first fiscal quarter. Our industry leading gross margin and operating margin percentages each improved at 76.4% and 45.9% while earnings per share increased $0.02 to $0.54.  For the fiscal year, revenue declined 3.5% to $1.42 billion, while earnings per share decreased $0.10 to $2.02.

## D.     **The Preclusive Deal Protection Devices**

31.     Despite Linear's prospects for future profitability and growth, Defendants targeted the sale of the Company only to Analog and agreed to onerous deal provisions and other agreements to ensure a sale only to Analog.  These onerous and preclusive deal protection devices operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

32.     The Merger Agreement contains a strict "no solicitation" provision prohibiting the Board from taking any affirmative action to comply with their fiduciary duties to maximize stockholder value, including soliciting alternative acquisition proposals or business combinations.   The Merger Agreement also includes a strict "standstill" provision which

prohibits, except under extremely limited circumstances, the Defendants from even engaging in discussions or negotiations relating to proposals regarding alternative business combinations.

33.    Specifically, Section 5.4(a) of the Merger Agreement includes a "no solicitation" provision barring the Board and any Company personnel from soliciting, initiating, facilitating or encouraging alternative proposals in an attempt to procure a price in excess of the amount offered by Analog.  The Company also must terminate any and all prior or existing discussions with other potential suitors.

34.    Additionally, Section 5.3 of the Merger Agreement grants Analog recurring and unlimited matching rights, which provides it with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid (§5.3(c)); and (ii) four (4) business days to negotiate with Analog to amend the terms of the Merger Agreement and make a counter-offer in the event a superior offer is received (§5.3(e)).  Section 5.3(d) requires the Company to notify Analog within 48 hours that it has received an inquiry, proposal or offer.

35.    To further ensure the success of the Proposed Transaction, the Board locked up the deal by agreeing to pay a termination fee of $490 million in cash if it agrees to accept a superior proposal. Sections 7.1(g), 7.3(c)-(d). The terms of the Merger Agreement essentially requires that the alternative bidder agree to pay a naked premium for the right to provide Linear stockholders with a superior offer.

36.    These provisions cumulatively discourage bidders from making a competing bid for the Company.

**E.    The Materially Incomplete and Misleading Proxy**

37.    On September 16, 2016, Defendants caused the Proxy to be filed with the SEC, and the Proxy has been published on the SEC's online Edgar database.  The information contained in the Proxy has thus been disseminated to Linear shareholders to solicit their vote in

1   favor of the Proposed Transaction.  The Proxy omits certain material information concerning the

2   fairness of the Proposed Transaction and Merger Consideration. Without such information,

3   Linear shareholders cannot make a fully informed decision concerning whether or not to vote in

4   favor of the Proposed Transaction.

5         38.   First, the "Certain Projections Reviewed by the Linear Technology board of

6   directors" section on page 111 of the Proxy provides line item projections for certain non-GAAP

7   (generally accepted accounting principles) measures without providing sufficient information

8   concerning the various adjustments that were made to each measure, which renders the disclosed

9   projections materially misleading.  Indeed, the Proxy at page 110 notes that "The unaudited

10  financial projections include non-GAAP financial measures. Non-GAAP financial measures are

11  not prepared in accordance with GAAP and should be considered as a supplement to, not a

12  substitute for, or superior to, the corresponding measures calculated in accordance with GAAP.."

13  Yet by providing Linear shareholders with the non-GAAP projections, which have been further

14  adjusted in unique ways by the Company, the Individual Defendants are in fact asking Linear

15  shareholders to consider the projections in isolation from and as a substitute for financial

16  information presented in compliance with GAAP.

17        39.   Specifically, the Proxy contains Linear's projections for Revenues, Gross Profit,

18  Operating Income, Net Income, Net Operating Profit After Taxes, Unlevered Free Cash Flow

19  and Earning Per Share. The Proxy goes on to explain that two of the critical projected line items,

20  Net operating profit after taxes and Unlevered Free Cash Flow are non-GAAP projections. The

21  Proxy goes on to explain how it calculated Unlevered Free Cash Flow by starting with operating

22  income (as shown in the table above and includes stock-based compensation expenses) and

23  subtracting estimated cash taxes payable, capital expenditures, investment in working capital and

24  then adding back depreciation expense and stock-based compensation expenses. Yet, none of

25  these line items are disclosed in the Proxy.

26

27

28

CLASS ACTION COMPLAINT

40.     The Proxy thus fails to provide the line item projections for the various adjustments made to Linear's non-GAAP financial projections included in the Proxy, and further fails to reconcile the adjustments by providing the most directly comparable financial measures calculated and presented in accordance with GAAP.  The omission of such information renders the Linear non-GAAP financial projections disclosed in the Proxy misleading.

41.     Furthermore, the Proxy fails to disclose any standalone projections for Analog Devices, which is critical since part of the Merger Consideration is paid in Analog Devices stock and merely showing pro forma projections is not enough. It is therefore imperative that Linear shareholders are able to properly assess Analog Devices's projections in order for them to assess the fairness of the Merger Consideration and the Proposed Transaction.

42.     The SEC requires the disclosure of certain information in solicitation materials. Thus, when a company discloses material information in a Proxy that includes non-GAAP financial measures, the Company must also disclose that non-GAAP financial measure along with comparable GAAP measures and a quantitative reconciliation of forward-looking information.  17 C.F.R. § 244.100.

43.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  The SEC Chair, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Linear have included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.   And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses;  individually  tailored  non-GAAP

revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[8]

44.    In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heighted its scrutiny of the use of such projections.[9]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts. The above-referenced line item projections that have been omitted from the Proxy are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.

45.    The Proxy also reveals a number of non-disclosure agreements with standstill provisions ("NDA") being executed by various bidders that participated in the sales process. However, the Proxy is silent as to whether the various NDAs had Don't Ask Don't Waive provisions and/or whether they are still in effect.

46.    Based on the foregoing disclosure deficiencies in the Proxy, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Linear shareholders will

---

[8] *See* Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), www.sec.gov/news/speech/chair-white-icgn-speech.html#_ftnref38 (emphasis added) (footnotes omitted).

[9] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0. (last visited 09/27/2016)

CLASS ACTION COMPLAINT

suffer if they are required to vote on the Proposed Transaction without the above-referenced material misstatements and omissions being remedied.

## CLASS ALLEGATIONS

37.     Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 individually and on behalf of all other holders of Linear common stock (except defendants named herein and any person, firm, trust, corporation, or other entity related to or affiliated with them and their successors in interest) who are or will be threatened with injury arising from Defendants' wrongful actions as more fully described herein (the "Class").

38.     This action is properly maintainable as a class action.

39.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are thousands of members in the Class.  As of July 29, 2016, there were 239,721,247 shares of Common Stock issued and outstanding.[10]  The holders of these shares of stock are believed to be geographically dispersed throughout the United States.  All members of the Class may be identified from records maintained by Linear or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

40.     Questions of law and fact are common to the Class and predominate over questions affecting any individual class member.  The common questions include, *inter alia*, the following:   (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a), SEC Rule 14a-9 among other SEC rules, (ii) whether the Individual Defendants may be liable under Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer irreparable harm if the Proposed Transaction is consummated as presently anticipated.

---

[10]  Company Form 10-K, www.sec.gov/Archives/edgar/data/791907/000079190716000207/lltc-20160703x10k.htm (last visited 09/27/2016)

41.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have and will sustain legal and equitable damages as a result of Defendants' wrongful conduct as alleged herein.

42.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude maintenance as a class action.

## COUNT I

### Claim for Violations of Section 14(a) of the
### Exchange Act Against All Defendants

44.     Plaintiff repeats and realleges each allegation set forth herein.

45.     Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

47.     Specifically, the Proxy violates Section 14(a), Rule 14a-9 and Regulation G because it omits material facts as set forth above which renders the statements and information identified above false and/or misleading.   Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render it non-misleading.

48.     The misrepresentations and omissions in the Proxy are material to Plaintiff who will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.   As a direct and proximate result of Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff and the members of the Class have no adequate remedy at law.

## COUNT II

### Claims for Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50.     Plaintiff repeats and realleges each allegation set forth herein.

51.     The Individual Defendants acted as controlling persons of Linear within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Linear, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and/or materially incomplete and therefore misleading.

52.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.   The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.

Thus, the Individual Defendants were intimately connected with and directly involved in the making of this document.

54.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above, which has been omitted from the Proxy and obtain increased merger consideration for the Company's stockholders;

C.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages

D.     In the event Defendants consummate the Proposed Transaction, awarding damages to Plaintiff and the Class;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated:  September 28, 2016

**FARUQI & FARUQI, LLP**


/s/ *Barbara A. Rohr*_____
Barbara A. Rohr, SBN 273353
Benjamin Heikali, SBN 307466
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile:  (424) 256-2885
Email:  brohr@faruqilaw.com
         bheikali@faruqilaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: (212) 983-9330
Email: nfaruqi@faruqilaw.com

-and-

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 601-2610
Email: jmonteverde@faruqilaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, David Guerra ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed a draft complaint against Linear Technology Corporation ("Linear") and the members of its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.  Plaintiff selects Monteverde & Associates PC and Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.  Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.  Plaintiff's transactions in Linear securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.  In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, unless otherwise specified below.

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 28th day of September, 2016.

_David Guerra_
David Guerra

| Transaction<br>(Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 10/08/15 | 200 |
|  |  |  |
|  |  |  |
|  |  |  |